United States District Court
Southern District of Texas
**ENTERED**
November 15, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| JENNIFER DUPRE, *et al.*, § | |
| § | |
| Plaintiffs. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:22-cv-00264 |
| § | |
| SLATE HEALTHCARE LLC, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND RECOMMENDATION

The is a Fair Labor Standards Act ("FLSA") case. Defendant Slate Healthcare, LLC ("Slate") has filed two motions that are pending before me. In its Motion for Summary Judgment, Slate argues that the FLSA's standard two-year limitations period applies to the instant matter because Plaintiffs are unable to demonstrate that the company willfully violated the FLSA so as to invoke the statute's three-year limitations period. *See* Dkt. 61. In its separate Motion to Dismiss for Lack of Subject-Matter Jurisdiction filed under Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3), Slate insists it made an unconditional tender to Plaintiffs that provided them full relief, thus mooting the FLSA claims raised in this lawsuit. *See* Dkt. 70. Having reviewed the briefing, the record, and the applicable law, I recommend that both motions be **GRANTED**.

## FACTUAL BACKGROUND

On January 27, 2022, Plaintiffs Jennifer Dupre and Melinda Wilson (collectively, "Named Plaintiffs") filed this lawsuit as a collective action, alleging that Slate failed to properly pay them for overtime as required by the FLSA.

Named Plaintiffs worked as traveling nurses for Slate, an employment company that provides traveling nurses to healthcare facilities. According to the Complaint, Slate paid Named Plaintiffs a base hourly rate, paid them overtime based upon the base rate, and then also paid them an untaxed hourly per diem, which fluctuated based on the number of hours Named Plaintiffs worked. Named

Plaintiffs claim their per diem constituted wages that should have been included in the regular rate for purposes of calculating their overtime rate. Named Plaintiffs further allege that, because the per diem was not included in the regular rate, Slate did not properly pay them one and a half times their regular rate for hours worked in excess of 40 in a given week, as mandated by the FLSA.

The parties stipulated that notice of this collective action case be sent to all current and former traveling nurses employed by Slate from July 24, 2020 through June 1, 2022. Fifty-six individuals have opted into the collective action. I will refer to the opt-ins and Named Plaintiffs, collectively, as "Plaintiffs."

On March 11, 2024, Slate made an Offer of Judgment, offering to pay a total of $150,000 to Plaintiffs for their alleged FLSA damages. *See* Dkt.70-1 at 5. Slate also agreed to "pay any reasonable attorneys' fees and costs to which Plaintiffs are entitled to under the FLSA, the amount of which shall be determined by the Court." *Id*. at 6. Slate maintains that the amount it has offered to resolve this case exceeds the overtime it allegedly owes to Plaintiffs. Plaintiffs rejected Slate's offer.

On May 23, 2024, Slate unconditionally tendered a check in the amount of $150,000 to Plaintiffs' counsel. Slate maintains that the $150,000 figure "encompasses [P]laintiffs' alleged damages that are calculated based on the F.L.S.A.'s two-year statute of limitations." Dkt. 70-2 at 3. To date, Plaintiffs have rejected Slate's tender.

## LEGAL STANDARDS

**A.   SUMMARY JUDGMENT**

"Summary judgment is proper when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Coleman v. United States*, 912 F.3d 824, 828 (5th Cir. 2019); *see also* FED. R. CIV. P. 56(a). "The summary judgment movant bears the burden of proving that no genuine issue of material fact exists." *Certain Underwriters at Lloyds, London v. Cox Operating*, 83 F.4th 998, 1002 (5th Cir. 2023). A fact issue "is material only if its resolution could affect the outcome of the action." *Manning v. Chevron Chem. Co.*, 332 F.3d

874, 877 (5th Cir. 2003) (quotation omitted). In deciding whether a fact issue exists, I review the evidence and draw all inferences in the light most favorable to the nonmoving party. *See Bourne v. Gunnels*, 921 F.3d 484, 492 (5th Cir. 2019).

**B.    RULE 12(b)(1) AND RULE 12(h)(3)**

A motion to dismiss under Rule 12(b)(1) challenges a district court's subject matter jurisdiction. *See* FED. R. CIV. P. 12(b)(1). "Subject matter jurisdiction defines the court's authority to hear a given type of case; it represents the extent to which a court can rule on the conduct of persons or the status of things." *Carlsbad Tech., Inc., v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up). Because Plaintiffs chose to file this lawsuit in federal court, it is their burden to establish that this court possesses subject matter jurisdiction to hear this case. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

## ANALYSIS

**A.    SUMMARY JUDGMENT[1]**

FLSA claims are generally subject to a two-year limitations period, but if the violation is "willful," a three-year limitations period applies. 29 U.S.C. § 255(a). "The standard for determining willfulness is whether the employer either knew or showed reckless disregard for whether his conduct violated the FLSA." *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018, 1036 (5th Cir. 1993). "Simply failing to seek legal advice . . . does not evidence a willful violation of the statute. Nor is a

---

[1] Ordinarily, a district "court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). But this is a unique case because Slate's subject-matter-jurisdiction challenge assumes the FLSA's two-year statue of limitations applies. I must therefore decide the summary judgment motion first. If I decide that the two-year statute of limitation applies, I can proceed to assess Slate's jurisdictional challenge. If, however, I determine that Plaintiffs have proffered evidence of a willful FLSA violation, meaning the three-year limitations period applies, then Slate's jurisdictional challenge becomes moot. This is because it is undisputed that Slate has not tendered enough money to provide complete relief for three years of alleged FLSA damages.

negligent violation of the statute a willful violation." *Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) (cleaned up). "Mere knowledge of the FLSA and its potential applicability does not suffice, nor does conduct that is merely . . . unreasonable." *Zannikos v. Oil Inspections (U.S.A.), Inc.*, 605 F. App'x 349, 360 (5th Cir. 2015). "[T]he employee has the burden of demonstrating willfulness for the three-year limitations period to apply." *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015).

"Because willfulness is a question of fact, summary judgment in favor of the employer is inappropriate if the plaintiff has introduced evidence sufficient to support a finding of willfulness." *Ikossi-Anastasiou v. Bd. of Supervisors of La. State Univ.*, 579 F.3d 546, 552 (5th Cir. 2009). The following evidence has been found sufficient to support an inference of willfulness:

> (1) admissions that an employer knew its method of payment violated the FLSA prior to the accrual of the action; (2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA; (3) earlier violations of the FLSA that would put the employer on actual notice of the requirements of the FLSA; (4) failure to keep accurate or complete records of employment; and (5) prior internal investigations which revealed similar violations.

*Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-cv-0555, 2016 WL 808815, at *5 (N.D. Tex. Mar. 2, 2016) (cleaned up).

Slate argues that Plaintiffs have not presented any evidence sufficient to support an inference of willfulness. I concur. It is undisputed that, prior to January 2022, Slate paid its traveling nurses overtime at one and a half times the base hourly rate but did not include the per diem in calculating the base hourly rate. Sandra Lee, one of Slate's co-owners, testified that although she has long known the general rule that employees should be paid time and half for those hours worked in excess of 40 hours per week, she did not realize that the pier diem amounts should be included in calculating the overtime rate. *See* Dkt. 61-2 at 5–8. Lee added that when Slate implemented its overtime pay practice back in 2019, the

4

company simply followed a long-standing industry custom of not including the per diem as part of the base hourly rate utilized for overtime calculations. *See id.* at 8.

In December 2021, Lee learned of a Ninth Circuit case, *Clarke v. AMN Services, LLC*, 987 F.3d 848 (9th Cir. 2021), which involved "a healthcare staffing company that place[d] hourly workers on short-term assignments throughout the United States." *Id.* at 850–51. The defendant in that case had a "practice of prorating traveling clinicians' per diem payments when they work fewer hours or shifts than required by their employment contracts." *Id.* at 851. The Ninth Circuit held that the per diem "functioned as compensation for hours worked" and could not be excluded from the FLSA's regular rate computation. *Id.* at 858. As of December 2021, Slate's pay structure was strikingly similar to the one described in *Clarke*. Slate updated its overtime pay practice in January 2022 in an effort to comply with the *Clarke* decision. *See* Dkt. 67-4 at 4.

There is simply no evidence suggesting that Slate "either knew or showed reckless disregard as to whether its conduct was prohibited by the [FLSA]." *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990). To the contrary, the record establishes that "once [Slate] became aware that its pay practice may be in violation of the FLSA at the end of December 2021, it started implementing changes to its pay practice just two weeks later in January 2022." Dkt. 68 at 5.

For some unknown reason, it appears as if four of the 58 Plaintiffs continued to be paid under the previous overtime system as late as August 2022. Plaintiffs argue that "[t]his fact alone indicates that Slate Healthcare's violation of the FLSA is 'willful' in that it admits it was on notice of its FLSA requirements, yet took no actual affirmative action to assure compliance with the FLSA as demonstrated by the nurses' payroll records." Dkt. 67 at 5. I disagree. "The Supreme Court has specifically stated that the word 'willful' refers to conduct that is voluntary, deliberate, and intentional, and not merely negligent." *Dalheim v. KDFW-TV*, 706 F. Supp. 493, 511 (N.D. Tex. 1988) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)). As Slate points out, "Plaintiffs present no evidence as to why

those four plaintiffs were paid in this manner, much less that it was done willfully rather than inadvertently." Dkt. 68 at 2.

Because Plaintiffs have not shown evidence of willful FLSA violations by Slate, the two-year—not the three-year—statute of limitations applies. *See* 29 U.S.C. § 255(a). Slate is entitled to summary judgment on this issue.

## B. MOTION TO DISMISS

Having determined that Plaintiffs are limited to recovering, at most, two years of damages for Slate's alleged FLSA violations, I now turn to Slate's Motion to Dismiss for Lack of Subject-Matter Jurisdiction. Slate notes that it has tendered to Plaintiffs a check in the amount of $150,000. Claiming that this sum exceeds the full relief Plaintiffs are entitled to recover in this action, Slate insists that Plaintiffs' FLSA claims are now moot and should be dismissed for lack of subject matter jurisdiction. In response, Plaintiffs argue that their potential damages in this matter far exceed the $150,000 that Slate has tendered.

As an initial matter, I note that the parties agree on the underlying legal principles involved. Article III grants federal courts the "judicial power" to adjudicate only "cases" or "controversies." U.S. CONST. art. III, § 2. When there has been a tender of *complete* relief by a defendant, a plaintiff's claims for damages under Article III are moot, thus depriving the trial court of jurisdiction. *See, e.g.*, *Jarrett v. United States*, 79 F.4th 675, 679 (6th Cir. 2023) (noting that a "tender of complete relief moots a claim for damages"); *Duncan v. Governor of V.I.*, 48 F.4th 195, 206 (3d Cir. 2022) (recognizing that "claims for cash can always be mooted swiftly with payment"); *Radha Geismann, M.D., P.C. v. ZocDoc, Inc.*, 909 F.3d 534, 542 (2d Cir. 2018) (acknowledging that a plaintiff's claim will become moot for purposes of Article III when "a defendant surrenders . . . complete relief" (cleaned up)); *Chen v. Allstate Ins. Co.*, 819 F.3d 1136, 1145 (9th Cir. 2016) (observing that "a claim becomes moot once the plaintiff *actually receives* all of

6

the relief to which he or she is entitled on the claim").[2] So long as Plaintiffs "have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted).

With this legal framework in mind, I must determine whether Slate's $150,000 tender to Plaintiffs constitutes complete relief. If Plaintiffs are entitled to recover more than $150,000 in monetary damages, their case is not moot and they may proceed with this litigation. On the other hand, if the $150,000 represents—or exceeds—the monetary relief Plaintiffs could conceivably recover in this FLSA lawsuit, the case is moot and must be dismissed.

The FLSA establishes a standard 40-hour workweek by requiring employers to pay "one and one-half times the regular rate" for any additional time worked. 29 U.S.C. § 207(a). A prevailing plaintiff in an FLSA overtime case is entitled to (1) an hourly rate for all straight time up to 40 hours per week; (2) overtime wages for all hours worked in excess of 40 hours per workweek at time and a half the hourly rate; (3) liquidated damages equal to the amount of the unpaid overtime compensation; and (4) reasonable attorneys' fees and costs. *See id.* § 216(b).

"Because Slate's application of per diem is based upon the number of hours worked," Plaintiffs contend "the per diem amounts must be included in the employees 'regular rate' of pay when paying overtime compensation as required by the FLSA." Dkt. 23 at 2. To this end, Plaintiffs' damages expert has provided damages calculations that include the per diem payments made by Slate in the regular rate of pay. *See* Dkt. 82-1. Plaintiffs' expert calculated each Plaintiffs' regular rate for each workweek as follows: [(straight time for all hours worked) +

---

[2] The Supreme Court has held that an unaccepted *offer* of settlement does not moot a claim and deprive a court of jurisdiction. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016). "Actual payment—a tender of the money due—differs. . . . Such a tender gives the plaintiff all the relief she could receive, and as a result it moots any claim for damages." *Jarrett*, 79 F.4th at 678. There is no dispute that Slate has unconditionally tendered $150,000 to Plaintiffs in the form of a check.

per diem]/all hours worked. For purposes of the motion to dismiss, Slate does not dispute Plaintiffs' expert's regular-rate-of-pay calculations.

In connection with its unconditional tender, Slate also does not contest how Plaintiffs' expert calculated the amount each Plaintiff should have been paid for overtime in each workweek: (1.5 x regular rate) x overtime hours. So far, so good.

But then Plaintiffs' expert makes a critical mistake. Plaintiffs' expert concludes that the amount each Plaintiff is due for a particular workweek is the amount of overtime pay that should have been paid minus the amount of overtime compensation that was paid. This calculation, while admittedly simple, is wrong. When employees have already received non-overtime pay for all hours worked, and some compensation for overtime hours worked, they are entitled to recover the difference between what they would have received had the employer followed the law and paid overtime at 1.5 times the regular rate and what they actually received. *See Hanson v. Camin Cargo Control, Inc.*, No. H-13-0027, 2015 WL 1737394, at *8 (S.D. Tex. Apr. 16, 2015) ("Because the inspectors have already received straight-time pay for all hours worked, . . . they are entitled only to additional half-time pay for each overtime hour. Moreover, because the inspectors have received some overtime pay (erroneously calculated) for those overtime hours, those amounts should be deducted from the half-time premium, in order to arrive at the final amount of unpaid overtime due."). This amount will make Plaintiffs whole by allowing them to earn 1.5 times their regular rate for all hours worked over 40 hours in a workweek. As Slate points out, the proper methodology for determining Plaintiffs' alleged damages is to calculate the total compensation due (that is, (all hours worked x regular rate) + (overtime hours x .5 regular rate)) and then "subtract[] the amount already paid to Plaintiffs from total compensation [due] to determine the amount of wages owed to Plaintiffs, if any." Dkt. 70 at 5 n.2 (emphasis removed).

8

A simple example illustrates why Plaintiffs' damages calculations are incorrect. Take Jennifer Dupre for the week of January 9, 2021. She worked a total of 71.55 hours for which she was paid as follows:

- 40 hours straight time at $15/hour:        $600.00
- 31.55 hours of overtime at $27.50/hour[3]:  $867.63
- 71.55 hours of per diem at $25/hour:       $1,788.75
  **Total Paid:**                              $3,256.38

*See* Dkt. 82-1 at 8. The crux of Plaintiffs' case is that the $25/hour per diem was actually compensation for hours worked and must be included in determining the regular rate. Making that assumption, Plaintiffs' expert calculated Dupre's regular rate for the week of January 9, 2021, to be $40:

- [(straight time for all hours worked) + per diem] / all hours worked = regular rate
- [($15 x 71.55) + $1,788.75] / 71.55 = $40

Again, Slate does not, at least for the purposes of the current motion, take issue with the regular rate calculation of $40 per hour. With the regular rate calculated, Plaintiffs' expert then determined the amount that he asserts Dupre should have been paid for overtime work:

- (1.5 x regular rate) x overtime hours = amount of overtime compensation due
- (1.5 x $40) x 31.55 = $1,893

Slate also does not dispute this calculation. Given these monetary figures, one need only apply the following statutory computation to determine the amount of FLSA damages to which Dupre is hypothetically entitled for the week of January 9, 2021:

- Total compensation due ((all hours worked x regular rate) + (overtime hours x .5 regular rate)) - the amount already paid to Dupre = Damages

---

[3] It is unclear to me why Dupre received $27.50 per hour for overtime work during the week of January 9, 2021, because that is more than 1.5 times the $15 hourly rate. But that is of no moment because the purpose of the damages calculations is to determine how much Dupre *should have* received for this time period.

9

- ((71.55 x $40) + (31.55 x $20)) - $3,256.38 = Damages
- ($2,862 + $631) - $3256.38 = Damages
- $3,493.00 - $3,256.38 = $236.62

This is proper way to calculate the damages Dupre may recover for the week of January 9, 2021, if she prevails in this case. The sum equals $236.62.

Plaintiffs' expert, however, claims that Plaintiffs are entitled to the per diem payments already received plus an additional 1.5 times the regular rate. As Slate notes, "Plaintiffs are trying to have their cake and eat it, too." Dkt. 79 at 4. Plaintiffs' expert erroneously calculates Dupre's damages for the week of January 9, 2021, as $1,025.37, which is the amount of overtime that he claims should have been paid ($1,893.00) minus the amount of overtime actually paid ($867.63). Under this flawed approach, Dupre would receive a total of $4,281.75. That is the $3,256.38 she already received from Slate for her work the week of January 9, 2021, plus $1,025.37 from Slate in this litigation. This calculation, to put it mildly, represents a huge windfall to Dupre given that the money she should have received that week for 40 hours of work at a regular rate of $40 plus 31.55 hours of overtime at 1.5 times the regular rate equals only $3,493.00.

If the court were to accept Plaintiffs' proposed damages calculations, Plaintiffs would be placed in a substantially better position than had Slate simply complied with the FLSA's overtime requirements. As one would expect, the law does not countenance such a result. Indeed, the Fifth Circuit has expressly recognized that FLSA damages should reflect the plaintiffs' actual losses and must not represent a windfall. *See Johnson v. Martin*, 473 F.3d 220, 222 (5th Cir. 2006); *see also Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (observing that the FLSA's purpose is to make plaintiffs whole, not to grant them a windfall).

Utilizing what is kindly described as mathematical creativity, Plaintiffs' expert calculates Plaintiffs' total damages for a two-year statute of limitations to be $302,652.31. *See* Dkt. 82-1 at 6. But using the proper damages methodology, as

described in detail above, results in a total damage claim of, at most, $66,661.48 for all Plaintiffs for a two-year period. *See* Dkt. 70-4 at 2. When liquidated damages are added, the total doubles to $133,322.96. *See id*. Slate has tendered $150,000 to Plaintiffs, a sum that far exceeds the amount that Plaintiff could recover in the event they prevail at trial.[4]

As far as reasonable attorneys' fees and costs are concerned, Slate acknowledges that Plaintiffs would be able to recover those amounts if they prevail in this FLSA litigation. As a result, Slate has agreed to pay reasonable attorneys' fees and costs as determined by the court. Courts across the country handing FLSA cases have found that an employer's offer to pay attorneys' fees and costs as the court may determine affords plaintiffs with complete relief, mooting their claims for affirmative relief. *See Winters v. Camber Corp.*, No. SA-13-CA-221, 2013 WL 12394386, at *13 & n.150 (W.D. Tex. Nov. 6, 2013) (collecting cases).

In sum, the $150,000 Slate has tendered to Plaintiffs—along with its pledge to allow the court to determine reasonable costs and attorneys' fees incurred in this litigation—provides Plaintiffs with complete relief. Plaintiffs' claims are moot.

---

[4] The actual damages figure ($66,661.48) is probably inflated. To reach this amount, Slate used the proper damage methodology to calculate damages for the time periods that Plaintiffs claim fall within the two-year limitations period. A close review of the data, however, reveals that in calculating a two-year damage award, Plaintiffs considered time periods that unquestionably fall outside the two-year limitations period. For example, Plaintiffs claim that, under a two-year damages calculation, Djenaba Jones should receive additional compensation for time worked during the week of August 12, 2021. *See* Dkt. 82-1 at 15. But Djenaba Jones did not submit her consent until October 19, 2023. *See* Dkt. 46. Thus, the two-year statute of limitations prohibits her from recovering any sums earned before October 19, 2021. Put another way, Djenaba Jones is legally prohibited from receiving compensation allegedly due in August 2021. But this really does not matter because the mistakes work in Plaintiffs' favor. Slate simply assumed that Plaintiffs could receive damages for the dates for which Plaintiffs' expert claimed they were entitled to damages and then applied the proper mathematical calculations to come to the appropriate damages figure for those time periods. That Slate's calculations include dates for which Plaintiffs cannot recover damages goes to show that Slate's $150,000 tender far exceeds the amount Plaintiffs could recover in this lawsuit for actual damages and liquidated damages combined.

There is no "case" or "controversy." This case must be dismissed for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons discussed above, I recommend that both Slate's Motion for Summary Judgment and Motion to Dismiss for Lack of Subject-Matter Jurisdiction be **GRANTED**. Before the case is formally dismissed, Plaintiffs should be given the opportunity to seek a judicial determination as to the reasonable attorneys' fees and expenses incurred in connection with this litigation. I propose that Plaintiffs be ordered to file such a request 10 days after this Memorandum and Recommendation is adopted.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 15th day of November 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE